# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00027-CV

**Debra Marie Ramirez & Victor Bocanegra, Both Individually and as Next Friends of Colby Alan Ramirez, a Minor, Appellants**

**v.**

**Douglas K. McIntyre, M.D., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. 99-12665-A, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING

Appellants, Debra Marie Ramirez and Victor Bocanegra (collectively "appellants"), appeal the trial court's grant of summary judgment in favor of appellee, Dr. Douglas McIntyre, in a medical malpractice action for damages resulting from the labor and delivery of their son, Colby Alan Ramirez. We will reverse the trial court's judgment and remand the cause.

## BACKGROUND

On April 23, 1998, Debra Marie Ramirez ("Ramirez") presented to St. David's Medical Center to have labor induced, as scheduled by her obstetrician and attending physician, Dr. Patricia Gunter. Dr. Gunter visited Ramirez twice during the early stages of delivery, but subsequently left the labor and delivery area. As Ramirez's labor rapidly progressed and the baby's head began to crown, Dr. Gunter still had not returned. Dr. Douglas McIntyre was on the labor and delivery floor when a nurse paged for a "Dr. Stork" to Ramirez's delivery room. A "Dr. Stork" page

means that a delivery is in progress without a doctor and a doctor is needed immediately. Dr. McIntyre was not on-call for Dr. Gunter and had never treated or seen Ramirez but voluntarily responded to the page.

When Dr. McIntyre arrived at Ramirez's delivery room, a nurse was supporting the baby's head and told Dr. McIntyre that Ramirez was about to deliver. The indications of shoulder dystocia, a condition in which an infant's shoulder becomes lodged against the mother's pelvic bone, were present. Following several unsuccessful attempts of standard maneuvers to deliver the baby, Dr. McIntyre felt for the posterior arm of the baby and swept it across the baby's chest and delivered the baby's arm. Ramirez then delivered the anterior shoulder and the rest of the baby. Dr. McIntyre was in Ramirez's delivery room for approximately six minutes. Dr. Gunter arrived at the end of the delivery and assumed care of Ramirez and Ramirez's baby, Colby. As a result of the labor and delivery process, the soft tissues and nerves of Colby's right upper extremity, neck, and shoulder were injured, leaving Colby with permanent neurological impairment and paralysis of his right upper extremity and shoulder girdle.

Appellants filed suit against Dr. Gunter, Dr. McIntyre, and Columbia/St. David's Health Care System, L.P. d/b/a St. David's Medical Center. Dr. McIntyre filed a motion for summary judgment raising an affirmative defense under the Good Samaritan statute found in section 74.001 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001 (West Supp. 2001). In a final judgment, the trial court granted Dr. McIntyre's motion for summary judgment. By two issues, appellants now appeal that judgment.

**DISCUSSION**

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

A defendant's motion for summary judgment should be granted if the defendant either disproves at least one essential element of each of the plaintiffs' causes of action or establishes all the elements of an affirmative defense. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). When a defendant moves for summary judgment on an affirmative defense, he must prove each essential element of his defense as a matter of law, leaving no issues of material fact. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). The function of the summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1995).

Dr. McIntyre based his motion for summary judgment on the affirmative defense found in the Good Samaritan statute at section 74.001 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 74.001. The relevant portions of that statute are as follows:

(b) This section does not apply to care administered:

    (1) for or in expectation of remuneration; . . .

(c) If the scene of an emergency is in a hospital or other health care facility or means of medical transport, a person who in good faith administers emergency care is not liable in civil damages for an act performed during the emergency unless the act is willfully or wantonly negligent, provided that this subsection does not apply to care administered:

    (1) by a person who regularly administers care in a hospital emergency room unless such person is at the scene of the emergency for reasons wholly unrelated to the person's work in administering health care; or

    (2) by an admitting or attending physician of the patient or a treating physician associated by the admitting or attending physician of the patient in question.

(d) For purposes of Subsections (b)(1) and (c)(1), a person who would ordinarily receive or be entitled to receive a salary, fee, or other remuneration for administering care under such circumstances to the patient in question shall be deemed to be acting for or in expectation of remuneration even if the person waives or elects not to charge or receive remuneration on the occasion in question.

*Id*. § 74.001(b)-(d).

It is undisputed that Dr. McIntyre administered emergency care in good faith and did not act wilfully or wantonly. The question on appeal is whether Dr. McIntyre proved himself protected by the defense as a matter of law. Appellants contend that Dr. McIntyre falls within two exceptions found in the statute. By their first issue, appellants argue that Dr. McIntyre comes within

4

section 74.001(b)(1), which excludes from protection individuals who administer emergency care "for or in expectation of remuneration." *Id*. § 74.001(b)(1).

Under section 74.001(d), two distinct possibilities exist for when a person is deemed to be acting for or in expectation of remuneration: when the individual would *ordinarily* (1) *receive* remuneration for administering care, or (2) *be entitled to receive* remuneration for such services. *Id*. § 74.001(d). While the first possibility speaks towards what is customary, the second possibility addresses legal entitlement. Dr. McIntyre falls within the protection of the Good Samaritan statute only if he conclusively proves, as a matter of law, that he would not customarily receive remuneration for the services he performed *and* he would not legally be entitled to remuneration. Under the statute, it is of no consequence that the person claiming protection waives or elects not to charge for the medical assistance.

In support of his motion for summary judgment, Dr. McIntyre tendered only his own affidavit to prove he did not come within this statutory exclusion. His relevant proof consisted of the following two statements:

> I did not charge the plaintiff for my services nor did I tender my services in expectation of compensation. This was not a situation for which I would ever charge.

Appellants argue that the trial court erred in relying on Dr. McIntyre's testimony to establish that he would not ordinarily receive or be entitled to receive remuneration for administering care under the circumstances of this case. Summary judgment may be based on the affidavit of an interested party so long as such affidavit evidence is clear, positive, direct, credible, free from contradiction, and susceptible of being readily controverted. Tex. R. Civ. P. 166a(c); *Republic Nat'l*

5

*Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986). Like the standard for the exclusion of evidence, the admission of summary judgment evidence also rests within the sound discretion of the trial court. *Sanders v. Shelton*, 970 S.W.2d 721, 727 (Tex. App.—Austin 1998, pet. denied). The trial court could thus rely on Dr. McIntyre's affidavit testimony to establish his eligibility for qualifying for protection under the Good Samaritan statute.

Dr. McIntyre provided competent evidence that he did not receive or expect remuneration from Ms. Ramirez. In his affidavit, Dr. McIntyre stated, "I did not charge the plaintiff for my services nor did I render my services in expectation of compensation. This was not a situation for which I would ever charge." However, these assertions in no way address whether Dr. McIntyre was *entitled* to receive remuneration for these services.

The record on appeal also contains Dr. McIntyre's deposition testimony concerning his affirmative defense. The relevant portions of his deposition testimony are as follows:

Q: Okay. Now you didn't bill Ms. Ramirez, did you?

A: No.

Q: Okay. You could have billed Ms. Ramirez had you wanted to. Is that true?

A: I don't think I -- I don't think I am ethically allowed to bill Ms. Ramirez. I suppose when you say "could," is it physically possible to send a bill to someone? Certainly I could have.

. . . .

Q: Did you send a bill to Ms. Ramirez for what you did in those few minutes in the delivery Room 2?

A: Certainly not.

Q: And why not?

A: Because it would be unethical, in my opinion, to do so.

Q: Are you familiar with anyone in Travis County who would send a bill when they provided emergency care under these circumstances?

A: I'm not familiar with anyone who has ever done that.

Q: What has your experience been in which there have been emergency situations where a physician has stepped in because of ethical responsibilities, and sent bills?

A: I have no experience of that ever happening.

Q: Do you think -- what are the ethical constraints that you see in billing a patient for performing the emergency services that you provided here?

A: Well, there are -- there is no -- there is nothing about the provision -- in my opinion, the provision of emergency services such as I rendered in this case that would allow me to render a bill for my services.

Q: And has that also been your experience with other physicians in Travis County performing emergency services?

A: In every instance I've ever known of, that was the standard.

Like Dr. McIntyre's affidavit testimony, the above deposition testimony establishes that Dr. McIntyre did not charge Ms. Ramirez for his services. Dr. McIntyre's deposition testimony also establishes that neither Dr. McIntyre nor, so far as he knows, any other physician in Travis County who might provide emergency services such as those Dr. McIntyre furnished would customarily charge for such services. However, Dr. McIntyre also has the burden to establish that he would not be entitled to remuneration. We do not believe the summary judgment evidence produced on this point is sufficient.

7

The only evidence in the record relating to whether Dr. McIntyre was entitled to charge for the services he administered to Ms. Ramirez was Dr. McIntyre's deposition testimony that "there is nothing about the provision–*in my opinion*, the provision of emergency services such as I rendered in this case that would allow me to render a bill for my services" (emphasis added). He further stated, "*I don't think* I am ethically allowed to bill Ms. Ramirez" (emphasis added).

We believe that Dr. McIntyre's testimony merely raises a fact issue and does not conclusively prove he was not entitled to remuneration. For testimony of an interested witness to establish a fact as a matter of law, it must be clear, direct, and positive, with no circumstances in evidence tending to discredit or impeach such testimony. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). The uncontradicted testimony of an interested witness that is clear, direct, positive, and otherwise credible may be treated as conclusive evidence when the opposite party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

Dr. McIntyre's testimony that, in his opinion, he did not believe he could receive remuneration is not the positive, incontestible evidence necessary to establish that fact as a matter of law. Furthermore, we cannot say there are no circumstances in the evidence tending to discredit Dr. McIntyre's testimony. *See Swilley*, 488 S.W.2d at 67. We bear in mind that evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Nixon*, 690 S.W.2d at 548. Most importantly, every reasonable inference must be indulged in favor of nonmovants and any doubts resolved in their favor. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984). We conclude that based on a review

8

of the record in its entirety, Dr. McIntyre has not produced conclusive evidence that he was not entitled, as a matter of law, to receive remuneration. We do not hold that Dr. McIntyre is excluded from the protection of the statute. We hold merely that he has failed to carry his summary judgment burden to prove he is not excluded.

Although Dr. McIntyre's testimony was properly considered as summary judgment proof, it did not establish every essential element of his affirmative defense. An issue of material fact thus remains as to whether Dr. McIntyre was legally entitled to receive remuneration for the services he rendered for Ramirez in the delivery room. We conclude, therefore, that the summary judgment was erroneously granted. *See Swilley*, 488 S.W.2d at 67.

## CONCLUSION

Because Dr. McIntyre's proof is insufficient to prove, as a matter of law, that he would not be entitled to remuneration and fails to establish that element of his affirmative defense, it cannot support the judgment. We thus reverse the trial court's judgment and remand the cause for further consideration.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Reversed and Remanded

Filed: October 25, 2001

9

Publish